1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE FARM FIRE AND CASUALTY
COMPANY, an Illinois corporation,

                    Plaintiffs,

          v.

SAMIA EL-MOSLIMANY; ANN P. EL-
MOSLIMANY; AND HAYAT SINDI,

                    Defendants.

CASE NO. C15-0124-MAT

ORDER GRANTING
SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff State Farm Fire and Casualty Company ("State Farm") filed a motion pursuant to Federal Rule of Civil Procedure 56 and 28 U.S.C. § 2201.  (Dkt. 27.)  State Farm seeks a declaratory judgment that it has no duty to defend Samia El-Moslimany and her mother Ann P. El-Moslimany ("defendants El-Moslimany" or "defendants") in the matter of *Sindi v. El-Moslimany*, No. 13-10798-IT (D. Mass.).  Defendants El-Moslimany oppose the motion.  (Dkt. 29.)  Now, having considered the motion and opposition, as well as the complaint in the underlying matter of *Sindi v. El-Moslimany*, the Court concludes the motion for summary judgment (Dkt. 27) should be GRANTED, and a declaratory judgment entered that State Farm

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 1

owes no duty to defend.

<u>BACKGROUND</u>

In January 2013, Hayat Sindi filed suit against defendants El-Moslimany in Massachusetts state court. Defendants El-Moslimany, in April 2013, removed the action to the United States District Court for the District of Massachusetts. *See Sindi v. El-Moslimany*, No. 13-10798-IT. Pursuant to a homeowners policy effective January 2011 and renewed annually, State Farm is defending defendants El-Moslimany in *Sindi v. El-Moslimany* under a reservation of rights.

In April 2015, State Farm filed the current action, against Sindi and defendants El-Moslimany, seeking a declaratory judgment that it owes no duty to defend Sami or Ann El-Moslimany from any of the claims pleaded in the underlying action. (*See* Dkts. 1 & 9.) State Farm repeatedly tried and failed to serve Sindi, and ultimately required two extensions to allow for service. (Dkts. 17, 22.) After she failed to appear or respond, State Farm, in February 2016, secured an Order of Default against Sindi. (Dkt. 28.) State Farm filed its summary judgment motion shortly after moving for the default.

A.    <u>Allegations in *Sindi v. El-Moslimany*</u>

Sindi avers defendants El-Moslimany, beginning in or around September 2011 and continuing through the current day, have engaged in a "knowing, intentional, and malicious campaign of defamation", and "a relentless course of conduct designed and intended to publicly embarrass, humiliate, and destroy [Sindi] through the perpetuation of intentional falsehoods." (Dkt. 9-1 at 1.) Sindi contends defendants engaged in this conduct based on their misapprehension of a personal, romantic relationship between Sindi and Samia El-Moslimany's husband, Fouad Dehlawi. (*Id*. at 1-7.) Sindi describes herself as an accomplished scientist,

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 2

entrepreneur, and philanthropist, and alleges defendants "have sought to tarnish [her] reputation and publically humiliate her by, among other things, falsely accusing [her] of engaging in fraud, misrepresenting her professional credentials, engaging in illegal misconduct, plagiarizing her scientific research and publications, and other libels which are demonstrably false and defamatory per se." (*Id*. at 1-3.)

Sindi alleges defendants repeatedly made knowingly false statements published to third parties in writing, orally, and through electronic means, in response to on-line articles written about her, in Facebook postings and emails, and in a blog maintained by Samia El-Moslimany, found at http://truehayatsindi.blogspot.com. (*Id*. at 14.)   She alleges defendants appeared in person and slandered her in her neighborhood, as well as at public conferences, where they distributed leaflets and spread out banners containing false and defamatory statements and directing onlookers to Samia's blog. (*Id*. at 7-19.)   Sindi avers these actions damaged her reputation and career, interfered with investments, relationships, and fundraising efforts in her business and other ventures, prompted a publishing company to back out of a contract to publish her biography, caused her to fear for her physical safety, and otherwise adversely affected her physical and mental health. (*Id*. at 17-23.)

Sindi includes a count of defamation, libel, and slander, describing a "campaign of libel and slander," styled by defendants as "operation arabian [sic] EXPOSURE". (*Id*. at 23.)   She avers the false statements "were made negligently, intentionally, and/or with reckless disregard for the truth or falsity of such statements," and that Samia El-Moslimany "acted negligently and/or with actual malice; . . . with reckless and wonton [sic] disregard of the truth; and . . . with the intent to ruin" Sindi's reputation. (*Id*. at 24.)

Sindi raises counts of tortious interference with contractual relationships and tortious

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 3

interference with prospective business relationships.  (*Id*. at 25-26.)  She alleges defendants knew of her publishing contract and other business relationships and intentionally published libelous statements they "knew or should have known" would induce the publishing company, among other parties, to refuse to perform its contractual obligation.  (*Id*. at 25.)  She alleges defendants knew of her contacts in academic, scientific, and business communities, as well as that "their intentionally published libelous statements would discourage these individuals from associating with, donating to, investing in, or otherwise engaging" in her endeavors.  (*Id*. at 26.)  Sindi avers defendants "were motivated by malice, with the intent, as they expressed it, to make [her] 'rue the day' she ever met" Samia El-Moslimany, and "expressed their intent to ruin her reputation as a business woman, entrepreneur, and scientist."  (*Id*. at 25-26.)

Sindi also claims intentional infliction of emotional distress through the publishing of malicious statements in multiple forums, by directly harassing her and by appearing at her home and at events at which she was scheduled to appear, and that defendants knew or should have known emotional distress would result from their extreme and outrageous conduct.   (*Id*. at 26-27.)  Sindi maintains she suffered harm in the form of "constant anxiety of her safety, even in her own neighborhood, in which [defendants] El-Moslimany have actively incited fellow Muslims to violence against her, with some posting comments that she should be 'stoned.'"  (*Id*. at 27.)

Sindi seeks a permanent injunction, in addition to money damages.  (*Id*. at 27-28.)  She contends defendants El-Moslimany "have vowed to set forth their defamatory campaign at all cost and without end", and seeks an injunction to "halt the malicious campaign of libel, slander, and defamation[.]"  (*Id*. at 28.)

B.      Homeowners Insurance Policy

The  State  Farm  homeowners  policy  issued  to  defendants  El-Moslimany  includes  a

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 4

personal liability provision that provides in part:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice.
>
> . . .

(*See* Dkt. 9, ¶11 and Dkt. 16, ¶11.)  The policy excludes from that coverage "**bodily injury** or **property damage**[] (1) which is either expected or intended by the **insured**; or (2) which is the result of willful and malicious acts of the **insured**[.]**"**  (*See* Dkt. 9, ¶12 and Dkt. 16, ¶12.)

Until January 2013, the policy defined an "occurrence" as follows:

> "**occurrence**" . . . means an accident, including exposure to conditions, which results in:
>
> a. **bodily injury**; or
>
> b. **property damage**;
>
> during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

(*See* Dkt. 9, ¶13 and Dkt. 16, ¶13.)  This definition was thereafter altered to reflect:

> "**occurrence**" . . . means an accident, including exposure to conditions, which first results in:
>
> a. **bodily injury**; or
>
> b. **property damage**;
>
> during the policy period.  All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

(*See* Dkt. 9, ¶14 and Dkt. 16, ¶14.)

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 5

The policy defines "**bodily injury**" as meaning "physical harm to a person, including any resulting sickness or disease", and including "the required care, loss of services and death resulting therefrom."  (*See* Dkt. 9, ¶13 and Dkt. 16, ¶13.)  However:

> **Bodily injury** does not include:
>
> . . .
>
> c.    emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person.

(*Id.*)

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986).  The nonmoving party may not rest upon mere allegations or denials in the pleadings, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). The nonmoving party must set forth specific facts demonstrating a genuine issue of fact for trial, Fed. R. Civ. P. (c)(1), and must present significant and probative evidence to support his or her claims, *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must draw all inferences from the underlying facts in favor of the nonmoving party.  *Id.*

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 6

As a federal court sitting in diversity, the Court applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1939). *See also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *State Farm Fire & Casualty Co. v. Smith*, 907 F.2d 900, 902 (9th Cir. 1990). There is no dispute that, in this case, Washington State law governs the parties' controversy. (*See* Dkts. 27 & 29.)

The Court must apply state law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). In the absence of an applicable decision, the Court must predict how the Washington Supreme Court would decide the issue, "'using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (quoting *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)). "'However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Id*. (quoting *Lewis*, 87 F.3d at 1545).

A.    Duty to Defend

The Court must here determine whether State Farm has a duty to continue its defense of defendants El-Moslimany under their insurance policy. The duty to defend an insured is broader than the duty to indemnify, and is based on "'*the potential for liability*.'" *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002)) (emphasis added in *Woo*). "An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id*. at 52-53 (internal quotation marks and quoted sources omitted). An insurer is not relieved of its duty

unless the claim alleged is "'clearly not covered by the policy.'"  *Id*. at 53 (quoting *Truck Ins. Exch*., 147 Wn.2d at 760).  In sum, the duty to defend is triggered where a policy "*conceivably covers* the allegations in the complaint, whereas the duty to indemnify exists only if the policy *actually covers* the insured's liability."  *Id*.  (emphasis in original). The Court construes an ambiguous complaint liberally in favor of the duty to defend.  *Id*.

The duty to defend must be determined only from the complaint, with two exceptions. *Id.* at 53-54 (cited source omitted).  "First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." *Id*. "Second, if the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer, or if the allegations … are ambiguous or inadequate, facts outside the complaint may be considered." *Id*. at 54 (quoted sources and internal quotation marks omitted).  Facts extrinsic to the complaint may be relied on by the insurer only to trigger, not to deny, the duty to defend.  *Id*. Where the duty to defend is uncertain, an insurer may, as here, provide defense under a reservation of rights and seek a declaratory judgment it has no duty to defend.  *Id*.

The Court construes an insurance policy as a contract, and the interpretation of that contract is a question of law.  *State Farm General Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).  Policies must be construed as a whole and the terms within "given a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000) (quoted sources omitted).  Where the language is clear, the court must enforce the policy as written and may not create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005).  A clause is only considered

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 8

1   ambiguous if it is susceptible to two or more reasonable interpretations, and any ambiguity is

2   resolved in favor of the insured.  *Id.*  The court is further bound by definitions provided in the

3   policy.  *Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 766, 198 P.3d 514

4   (2008) (citing *Overton v. Consol. Ins. Co*., 145 Wn.2d 417, 427, 38 P.3d 322 (2002)).

5          In this case, State Farm argues it has no duty to defend given that Sindi alleges knowing,

6   intentional conduct, not an accident, and because Sindi does not allege any resulting bodily

7   injury or property damage.  State Farm further argues that, even if Sindi had alleged property

8   damage or bodily injury, coverage would be precluded by the policy's exclusion of willful and

9   malicious acts.  Defendants El-Moslimany maintain State Farm has a duty to defend because the

10  complaint includes allegations of negligent conduct and bodily injury.  They also aver prejudice

11  would result from the late withdrawal of State Farm's defense.

12  B.    Allegation of an Occurrence

13         The State Farm insurance policy provides coverage for an "occurrence," which is defined

14  as "an accident" resulting in bodily injury or property damage.  (*See* Dkt. 9, ¶¶13-14 and Dkt. 16,

15  ¶¶13-14.)  The parties here disagree as to whether or not the complaint in *Sindi v. El-Moslimany*

16  can be construed as alleging an occurrence covered by the policy.

17         The policy does not define the term "accident."  Where "accident" is not defined in an

18  insurance policy, Washington courts look to the common law.  *Lloyd v. First Farwest Life Ins.*

19  *Co.*, 54 Wn. App. 299, 302, 773 P.2d 426 (1989) (citing *Detweiler v. J. C. Penney Casualty Ins.*

20  *Co.*, 110 Wn.2d 99, 104, 751 P.2d 282 (1988)).  *Accord Grange Ins. Ass'n v. Roberts*, 179 Wn.

21  App. 739, 755, 320 P.3d 77 (2013).  Common law definitions of accident include "'an unusual,

22  unexpected, and unforeseen happening,'" and "a loss that happens '"without design, intent, or

23  obvious motivation."'"  *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 197-98, 317 P.3d

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 9

532 (2014) (quoting *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989), and *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685, 801 P.2d 207 (1990) (quoted source omitted), *overruled in part on other grounds by Butzberger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004)).

Washington courts have clarified:

> [A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death.   The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

*Roller*, 115 Wn.2d at 685 (citations omitted).  The insured does not need to intend or expect the injurious consequences of actions taken.  *Lloyd*, 54 Wn. App. at 302 (citing *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 20 Wn. App. 261, 263, 579 P.2d 1015 (1978) (fire in school garbage can resulting in building blaze); *Safeco Ins. Co. of Am. v. Dotts*, 38 Wn. App. 382, 385-86, 685 P.2d 632 (1984) (backhand slap resulting in death)).  "All that is required is that the claimant know or should know facts from which a prudent person would conclude that the injurious consequences are reasonably foreseeable." *Id.  Accord Roberts*, 179 Wn. App. at 756.  This inquiry involves an objective, not a subjective determination.  *Speed*, 179 Wn. App. at 198 (citing *Roller*, 115 Wn.2d at 685).  The perspective of the insured is not relevant.  *Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 403, 823 P.2d 499 (1992); *Roller*, 115 Wn.2d at 685.  "Either an incident is an accident or it is not."  *Roller*, 115 Wn.2d at 685.

In this case, Sindi's complaint alleges a "knowing," "intentional," "malicious," "relentless," and "persistent" campaign, efforts, and course of conduct designed and intended to cause her harm, including extreme emotional distress.  (Dkt. 9-1.)  She alleges Samia El-Moslimany herself styled her conduct as an "'operation'", expressed her intent to make Sindi

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 10

"'rue the day'" she met Samia, and that defendants "have vowed to set forth their defamatory campaign at all cost and without end." (*Id.* at 15, 23, 25-26, 28.)

Sindi provides specific quotes exemplifying the deliberate nature of defendants' conduct. (*See*, *e.g.*, Dkt. 9-1, ¶36 ("'Don't think that . . . I will now go away . . . I am here forever.'"), ¶37 ("'Obviously you are a liar of pathological proportions to the extent that even you believe your own petty lies.  However, soon very soon, you will be exposed for the hypocrite & fraud that you are . . . how does it feel to have so screwed up your life?  And you thought you were untouchable . . . nope!  Nighty-night!'").)  She describes a conference at which defendants erected three large banners containing false and defamatory statements and directing onlookers to "TrueHayat Sindi.BlogSpot.com." (*Id.*, ¶45.)  Although conference organizers had withdrawn Samia El-Moslimany's registration, both defendants attended to distribute leaflets, and Ann El-Moslimany was twice escorted from the conference hall and attempted to evade eviction by hiding in the women's bathroom.  (*Id.*) At another conference, Samia El-Moslimany distributed leaflets bearing a caricature of Sindi and stating:  "A Nifty-Fifty Muslim Woman Scientist?  She's building, not breaking barriers for my Muslim Daughter!   LOOK for the TRUTH! TrueHayatSindi.BlogSpot.com." (*Id.*, ¶¶52-53 (emphasis removed).)   Emails sent to board members of a non-profit institute founded by Sindi, and over which she serves as C.E.O., stated Sindi is an "'academic fraud'", that her Ph.D. research and dissertation were the work of someone else, that she did not teach, do any research, or work while serving as a scholar at Harvard University, holds herself out as younger than she is to qualify for awards for young professionals, "is not the actual inventor of technology that she claims to have invented", and that another company she founded is "'fraudulent'". (*Id.*, ¶¶16, 57.)  Sindi avers that, as a result of defendants' conduct, she suffered emotionally and physically, and sustained damage to her

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 11

reputation, career, investments, relations, contracts, and business and other ventures.  (*See* 9-1.)  The complaint, in sum, alleges clearly deliberate, intentional conduct, the results of which would be reasonably foreseeable to a prudent person.

Defendants nonetheless maintain a duty to defend given that the defamation count is pled broadly, in the alternative, to provide for liability if Sindi proves defendants acted "negligently and/or with actual malice."  (Dkt. 9-1, ¶81; *see also id.*, ¶79 (alleging statements "were made negligently, intentionally, and/or with reckless disregard for the truth of [their] falsity"), ¶81 (also alleging Samia El-Moslimany acted with "reckless and wonton [sic] disregard of the truth").)  They point to allegations of negligent conduct through the posting of statements defendants El-Moslimany "knew to be false, or, *through the exercise of reasonable diligence* would have known to be untrue."  (*Id.*, ¶38 (emphasis added).)  Defendants maintain this alleged lack of diligence is buttressed by the observation of plentiful, publically available and readily accessible information proving the alleged defamatory statements were fabrications.  (*Id.*, ¶¶ 39, 42.)

The mere fact the complaint includes the terms "negligently" and "reckless" does not alter the clearly deliberate nature of the conduct alleged.  As found by the Washington Court of Appeals in *Roberts*:

> Under the common law definition of "accident," a reasonably foreseeable harm resulting from deliberate conduct is not an "accident" and, thus, not an "occurrence" under the Grange policy language at issue. *While Brandis could prove outrage by showing "reckless" conduct, the complaint's factual allegations, broadly construed, allege intentional conduct by Roberts.* Even accepting Roberts's argument that she could have acted recklessly without intending the result, the complaint clearly alleged deliberate actions by Roberts. As defined above, to be reckless is to know of and disregard a substantial risk of harm. Roberts's actions could foreseeably result in the plaintiffs' severe mental distress. There is

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 12

> no coverage for Roberts's alleged conduct under the Grange
> policy's clear and explicit language because the conduct does not
> constitute an "occurrence" within the meaning of the policy.

*Roberts*, 179 Wn. App. at 756-57 (emphasis added).  Likewise, in *Allstate Ins. Co. v. Bauer*, 96 Wn. App. 11, 16, 977 P.2d 617 (1999), neither the prosecution of an insured under a theory of criminal negligence, nor the inclusion of negligence allegations in a civil lawsuit changed the nature of the deliberate act at issue.[1]  *Cf. New York Underwriters Ins. Co. v. Doty*, 58 Wn. App. 546, 549, 794 P.2d 521 (1990) (an insured does not avoid an intentional acts exclusionary clause by carefully crafting a complaint to avoid labeling the insured's conduct as intentional).  In this case, the alternative legal theories included in Sindi's complaint appear no more than conclusory and, it would appear, contradictory to the intentional conduct alleged.

Moreover, whether defendants knew their statements were false or should have known them to be false through the exercise of reasonable diligence is immaterial.  Under Washington law, an "incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable."  *Roberts*, 179 Wn. App. at 756.  The facts alleged in the complaint, viewed liberally and objectively, reflect deliberate conduct and no "additional unexpected, independent and unforeseen happening" producing or bringing about the alleged result.  *Roller*, 115 Wn.2d at 685.  *See also Butler*, 118

---

[1] This Court has reached the same conclusion in considering the duty to defend under Washington State law.  *See, e.g., Wargacki v. Western Nat'l Assur. Co.,* No. C13-5373, 2015 U.S. Dist. LEXIS 1062 at *9-13 (W.D. Wash. Jan. 6, 2015) (finding no duty to defend where complaint alleged "at least negligence" in relation to a shooting because the facts alleged, viewed liberally and objectively, offered no support for the conclusion that the events were conceivably the result of an accident); *Metro. Prop. Cas. Ins. Co. v. Nieto*, No. 13-5805, 2014 U.S. Dist. LEXIS 90658 at *8-9 (W.D. Wash. Jul. 2, 2014) ("Starting a fight, or joining a fight, and biting another's nose are all deliberate acts, and no unforeseen event rendered them accidental. Pemberton's complaint strategically couches the Nietos' actions in 'negligence' terms, but that word choice cannot conceal the intentionality of their acts."); *Schorno v. State Farm Fire & Cas. Co.*, No. C09-5778,  2010 U.S. Dist. LEXIS 78503 at *13-17 (W.D. Wash. Aug. 3, 2010) (noting "coverage has been routinely denied to insureds for intentional acts as a matter of law, even when the harm is unintended" and that claims sounding in negligence are excluded from the duty to defend where the complaint unambiguously states the conduct giving rise to the claims was intentional).

1    Wn.2d at 400-01 (no accident even assuming injury resulted from an unintentional ricochet of

2    bullet); *State Farm Fire & Cas. Co. v. Parrella*, 134 Wn. App. 536, 541, 141 P.3d 643 (2006)

3    (no accident even though it was undisputed insured did not intend to injure claimant).  Indeed,

4    the facts as alleged by Sindi imply that, whether or not defendants knew their statements were

5    false, they acted with the intention to cause Sindi harm.  *See Roberts*, 179 Wn. App. at 769-70

6    ("The complaint alleged more than merely false statements.  It alleged that Roberts made false

7    statements for a specific tortious purpose.")

8            Defendants also aver a duty to defend based on the Washington Supreme Court's

9    decision in *Woo v. Fireman's Fund*.  They state that, under *Woo*, 161 Wn. 2d at 64-65, the focus

10   in considering a duty to defend is "on whether or not the insured intended all of the

11   consequences of his or her actions, not whether the actions themselves were intentional." (Dkt.

12   29 at 9.)  They maintain *Woo* changed the legal landscape after the decisions and standards

13   identified above.  Defendants argue that, like the defendant in *Woo*, it is possible they did not

14   intend the specific injuries alleged by Sindi, and that their statements "could have been part of

15   their 'continued or repeated' efforts to warn the public of their perceptions that Sindi is a

16   scientific, cultural, and religious fraud", and could "'conceivably'" be covered by the policy.

17   (*Id*. at 9-10.)

18           Yet, in *Woo*, unlike in this case, the insurance policy defined the term "accident" and

19   imposed a subjective standard:  "'Accident' is defined as a 'fortuitous circumstance, event or

20   happening that takes place *and is neither expected nor intended from the standpoint of the*

21   *insured*.'"  *Woo*, 161 Wn.2d at 62-63 (emphasis added).  The Washington Supreme Court relied

22   specifically on that definition in finding a duty to defend:

23           Woo's policy covers bodily injury that is caused by an "accident,"

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 14

> which is defined as a "fortuitous *circumstance, event or happening* that takes place and is *neither expected nor intended* from the standpoint of the insured." . . . . The Court of Appeals limited its analysis of the bodily injury coverage to whether Alberts' complaint alleged exclusively intentional conduct. However, based on the language of Woo's policy, he had to have "expected or intended" the specific "event or happening" alleged in the complaint. Thus, he would have to have intended not only the "event or happening" of photographing her with the boar tusk flippers in her mouth but also the "event or happening" that caused Alberts to sustain the specific injuries she alleged in her complaint. Although Woo's conduct was likely intentional, it is conceivable that Woo did not intend the conduct that resulted in Alberts' injuries.

*Woo*, 161 Wn.2d at 64 (emphasis in original).

In *Roberts*, the Washington Court of Appeals pointed to the "unique policy language" at issue in *Woo*, and the Washington Supreme Court's heavy reliance, in that case, on the policy's definition of "accident":

> In *Woo*, the insurance policy's plain language required that Woo intend not only the event or happening that caused the injury but also the injuries that resulted. Here, the definition of "occurrence" includes "accident." In contrast to the policy in *Woo*, the term "accident" is not defined in Grange's policy. We thus look to the common law definition.

*Roberts*, 179 Wn. App. at 754-55; *accord id*. at 770 n.11.  *See also Speed*, 179 Wn. App. at 197-99 (continuing to apply common law definition of "accident" and associated standards following the decisions in *Woo* and *Roberts*), and *Queen City Farms v. Cent. Nat'l Ins. Co.*, 126 Wn.2d 50, 66-69, 882 P.2d 703 (1994) (finding, prior to *Woo*, a subjective standard applied where an insurance policy provided that an occurrence was covered "'which unexpectedly and unintentionally'" resulted in damage, and distinguishing cases in which courts relied on common

law definitions of "accident").[2]   In contrast to the definition in *Woo*, the common law definition of "accident" imposes an objective standard; an incident is not an accident where an insured "knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable." *Roberts*, 179 Wn. App. at 755-56.

State Farm here establishes the absence of an "occurrence" under its policy.   The allegations in the complaint reveal no ambiguity, and provide no conceivable basis for coverage under State Farm's policy.   Rather than describing accidental behavior or result, the complaint alleges a course of intentional conduct, the result of which cannot be reasonably described as unforeseen, involuntary, unexpected, or unusual.

C.   Allegation of Property Damage or Bodily Injury

Under State Farm's policy, "occurrence" means an accident resulting in "bodily injury" or "property damage."   (*See* Dkt. 9, ¶¶13-14 and Dkt. 16, ¶¶13-14.)   State Farm argues the complaint fails to allege "bodily injury" or "property damage" caused by an occurrence.   While defendants appear to concede State Farm's argument regarding property damage, they maintain a claim of bodily injury.

Washington courts recognize that, under many insurance policies, purely emotional injuries do not constitute "bodily injury."   *See*, *e.g.*, *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784-94, 958 P.2d 990 (1998) (finding the term "bodily injury," defined as "bodily injury,

---

[2] This Court has similarly distinguished *Woo* and *Queen City Farms*.  *See, e.g., Country Mut. Ins. Co. v. Spencer*, C12-5044, 2012 U.S. Dist. LEXIS 160519 at *9-12 (W.D. Wash. Nov. 8, 2012) (distinguishing *Woo* based on its subjective policy language; finding allegations against defendant all necessarily required intentional conduct, and that the harm alleged was a "naturally and reasonably foreseeable product" of that conduct; also factually distinguishing *Woo* as involving a "prank"); *Twin City Fire Ins. Co. v. Triple/S Dynamics, Inc.*, No. C99-256Z, 2000 U.S. Dist. LEXIS 10871 at *10-12 (W.D. Wash. Mar. 1, 2000) (distinguishing *Queen City Farms* based on its subjective policy language for the definition of an "occurrence" or "accident").

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 16

sickness, disease or death", unambiguous and did not include recovery for emotional distress unrelated to a physical injury). However, emotional distress manifesting in physical symptoms may, under some policies, serve as "bodily injury." *See*, *e.g.*, *Lien Trinh v. Allstate Ins. Co.*, 109 Wn. App. 927, 936, 37 P.3d 1259 (2002) (where policy defined "'bodily injury' to mean 'sickness' or 'disease'", bodily injury included "emotional injuries that are accompanied by physical manifestations."; finding physically-manifested PTSD clearly and unambiguously fell within the "broad terms" of the policy's definition of bodily injury).

The State Farm policy defines "bodily injury" as "physical harm to a person, including any resulting sickness or disease" and "the required care, loss of services and death resulting therefrom." (*See* Dkt. 9, ¶13 and Dkt. 16, ¶13.) "Bodily injury" does not include "emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person." (*Id.*)

As defendants observe, the complaint in *Sindi v. El-Moslimany* alleges both a "degradation" in Sindi's "physical condition and mental health" and severe emotional distress. (Dkt. 9-1 at ¶¶73, 103.) Defendants also point to Sindi's responses to interrogatories as asserting defendants' conduct caused her to suffer a compromised immune system, stomach pain, a weakened/depleted heart, and other physical symptoms. (Dkt. 29-1 at 11.) Defendants argue that, given the strong suggestion of physical illness in the complaint and the facts as they have evolved during discovery, State Farm should be required to provide a defense.

Defendants, however, ignore the policy language at issue in this case in arguing that the physical impact alleged and physical symptoms later described by Sindi compel a duty to defend. State Farm's insurance policy requires "*physical harm to a person*" for coverage to apply, and expressly excludes coverage for emotional distress or similar injury "unless it *arises out of* actual

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 17

physical injury to some person." (*See* Dkt. 9, ¶13 (emphasis added), and Dkt. 16, ¶13.)  Courts have concluded this definition of "bodily injury" does not provide coverage for physical symptoms resulting from emotional distress, unless the emotional distress was caused by a physical injury. *See State Farm Fire & Cas. Co. v. Wilson*, Nos. 04-4263, 04-4264, 2005 U.S. App. LEXIS 21830 at *7-8, 12-16 (6th Cir. Oct. 7, 2005) (no coverage even where conduct involved physical contact: "Indeed, as commonly understood, contact with another results in a 'physical injury' only where a tangible harm to the body is ascertainable as a result of the contact."; despite insured's "highly offensive and humiliating conduct," the district court properly found no physical injuries were sustained from that conduct); *Schorno*, 2010 U.S. Dist. LEXIS 78503 at *17-18 (noting absence of claim of physical injury, and finding emotional distress injuries did not constitute "bodily injury" as defined under State Farm's policy); *D.B.C. v. Pierson*, 2:13-CV-00377, -00378, 2014 U.S. Dist. LEXIS 70295 at *11-13 (N.D. Ala. May 2014) (no "occurrence" under State Farm policy given that all claimed bodily illnesses and injuries were physical manifestations of emotional distress, and insureds presented no evidence of bodily injury resulting from conduct alleged); *Pratchenko v. Fuller*, 212 Wis.2d 641, 570 N.W.2d 62, 1997 Wisc. App. LEXIS 899 at *8-11 (Wis. Ct. App. Jul. 31, 1997) (coverage under State Farm policy not triggered "where there was no actual physical injury, which is a necessary predicate to recover for emotional harm.")

There is no allegation in the complaint that defendants El-Moslimany physically injured Sindi.  Moreover, Sindi's responses to interrogatories explain that her physical symptoms "resulted" from the "extreme emotional distress" she suffered as a result of defendants' conduct. (Dkt. 29-1 at 11-13) (". . . Dr. Sindi has suffered extreme emotional distress, which resulted in the following physical symptoms: . . ."; Sindi's "severe headaches . . . were the result of the

stress and emotional distress inflicted by the Defendants and their defamation.")

The allegation of a degradation in Sindi's physical condition and the physical symptoms described in discovery reflect, at most, physical manifestations of emotional distress. Because there is no allegation or evidence defendants inflicted and Sindi sustained actual physical harm, there is no "bodily injury" covered by State Farm's policy.

D.   Exclusionary Clause

State Farm additionally argues that, even if Sindi had alleged property damage or bodily injury, coverage would be excluded under the policy's willful and malicious acts exclusion. That is, coverage would be precluded given that the State Farm policy excludes from coverage "**bodily injury** or **property damage**[] (1) which is either expected or intended by the **insured**; or (2) which is the result of willful and malicious acts of the **insured[.]**" (*See* Dkt. 9, ¶12 and Dkt. 16, ¶12.)

Defendants do not address this exclusion. Because the Court finds no occurrence and no bodily injury or property damage covered by the policy, it need not address the willful and malicious acts exclusion. The Court does note, however, that Sindi alleges throughout her complaint that defendants El-Moslimany acted knowingly, intentionally, and maliciously. (*See* Dkt. 9-1.)

E.   Prejudice from Withdrawal of Defense

Defendants El-Moslimany argue they will be prejudiced if State Farm's defense is withdrawn just prior to the trial in *Sindi v. El-Moslimany*, currently set for May 23, 2016. They note that State Farm has provided defense counsel to them since early 2013, but waited until early 2015 to file its declaratory judgment action, and waited an additional year to file the motion currently under consideration. Defendants maintain that, if this Court finds no duty to defend,

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 19

they will have only a few weeks to find new counsel and secure financing for that expense. Defendants state that it is bad faith for an insurer to pursue a declaratory judgment action while defending under a reservation of rights if the action "might prejudice its insured's tort defense." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 918, 169 P.3d 1 (2007).

The decision cited by defendants does not support a finding of prejudice. In that case, an insurance company issued a subpoena to and engaged in ex parte communications with an arbitrator in an underlying arbitration action between the insured and a third party, indicating its intent to establish claim exclusion at the same time the insured was contesting liability. *Id.* at 914-18. The Washington Court of Appeals found the insurance company clearly and improperly showed greater concern for its own monetary interest than the interest of the insured, and acted in bad faith. *Id.* at 914-18 (while an insurer may defend under a reservation of rights while seeking a declaratory judgment of no duty to defend, "it must avoid seeking adjudication of factual matters disputed in the underlying litigation because advocating a position adverse to its insured's interests would 'constitute bad faith on its part.'"; an insurer also owes a duty to the insured "to refrain from engaging in any 'unreasonable, frivolous, or unfounded,' . . . 'action which would demonstrate a greater concern for [the insurer's] monetary interest than for [the insured's] financial risk.'") (quoted sources omitted).

Here, there is no indication State Farm has interfered in the underlying action of *Sindi v. El-Moslimany*, or done anything other than continue to provide for a defense in that matter. State Farm is entitled to pursue a declaratory judgment that it has no duty to defend and has established the absence of such duty in this case.

To be sure, the timing of this finding is unfortunate. However, the record in this case

does not support a contention of bad faith.  The one-year delay between the filing of the declaratory judgment action and the motion for summary judgment resulted from State Farm's repeated, unsuccessful attempts to effectuate service on defendant Sindi.  (*See* Dkts. 14-15, 17, 20-22, 26-27.)  State Farm reasonably waited until it succeeded in serving Sindi, and until it moved for a default judgment against her, to file its summary judgment motion.  (Dkts. 26-27.)

Nor does the delay between the initial provision of a defense and the filing of the declaratory judgment action reflect bad faith.  An insurer is required to give the insured the benefit of the doubt, and must continue its defense until it can conclusively establish a claim is not covered by the insurance policy.  *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014).  Defendants have benefited from the fact that State Farm has paid all defense fees and costs to date.

Finally, and as State Farm observes, defendants have submitted no evidence as to why they cannot retain their current counsel to continue defending them in *Sindi v. El-Moslimany*. Defendants suggest, but do not establish their defense counsel would withdraw on the eve of trial.  That defendants will now be compelled to pay for their defense does not justify a denial of State Farm's motion.

CONCLUSION

For the reasons set forth above, State Farm's Motion for Summary Judgment (Dkt. 27) is GRANTED.  State Farm establishes it has no duty to defend Samia and Ann P. El-Moslimany in the matter of *Sindi v. El-Moslimany*, No. 13-10798-IT (D. Mass.).  The Court will enter

/ / /

/ / /

/ / /

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 21

judgment declaring State Farm has no duty to defend.

DATED this 15th day of April, 2016.

_____
Mary Alice Theiler
United States Magistrate Judge

ORDER GRANTING
SUMMARY JUDGMENT
PAGE - 22